United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Jim Lundi,<br>Movant<br><br>v.<br><br>United States of America,<br>Respondent. | )<br>)<br>)<br>)  Civil Action No. 23-23820-Scola<br>)  Crim. Action No. 19-20075-Scola<br>)<br>) |

### **Order**

Before the Court is Movant Jim Lundi's motion to vacate sentence under 28 U.S.C. § 2255 (ECF No. 1)[1] docketed on October 5, 2023. The Court has considered the motion, Movant's memorandum of law (ECF No. 1-2), Movant's supplement to the motion (ECF No. 11), the Government's response (ECF No. 17), the Movant's reply (ECF No. 21), the Movant's supplement to the reply (ECF No. 23), the entire record, and is otherwise fully advised. For the reasons explained below, the motion is denied.

**1. Background**

On February 7, 2019, a grand jury indicted Movant on charges of sex trafficking of a minor in violation of 18 U.S.C. § 1591 (Count 1) and production of child pornography in violation of 18 U.S.C. § 2251 (Count 2). *See* Indictment CR ECF No. 8 at 1–2). The Government alleged that Movant had recruited the minor victim, a homeless sixteen-year-old girl, to perform commercial sex acts for paying customers. (*See* Sentencing Tr. CR ECF No. 90 at 49–50).

The case initially proceeded to trial, but, shortly after the victim testified on October 21, 2019, Movant indicated that he was willing to plead guilty. (*See* Day 2 Trial Tr. CR ECF No. 99 at 240–41). The parties entered an oral plea agreement where Movant agreed to plead guilty to Count 1 of the Indictment— which carried a mandatory minimum sentence of ten years in prison—in

---

[1] Citations to (ECF) refer to docket entries in case number 23-23820-CIV-Scola, and citations to (CR ECF) refer to docket entries in criminal case number 19-20075-CR-Scola.

exchange for the Government agreeing to dismiss Count 2. (*See* Change of Plea Tr. CR ECF No. 70 at 2–3). Defense counsel stated that he believed pleading guilty would be in Movant's "best interest," but explained that Movant "is aware that [the plea is] a minimum, not a maximum of ten [years], and that the Court is going to fashion a sentence based on the computation of the guidelines and the 3553 factors and what the Court deems appropriate." (*Id.* at 3).

Movant was placed under oath, where he confirmed that: (1) he was pleading guilty because he was, in fact, guilty, (*see id.* at 6); (2) he understood that the maximum sentence he could receive was life in prison, (*see id.* at 6–8); (3) his sentence would be "based upon the federal sentencing guidelines," (*id.* at 8); (4) he understood "in general" how the guidelines worked, (*id.*); and (5) he would not be able to withdraw his plea "if your attorney or anyone else" miscalculated his sentencing guidelines or the sentence that the Court imposed, (*id.* at 9). The Court accepted Movant's guilty plea after finding that Movant had freely, knowingly, and voluntarily changed his plea. (*See id.* at 12).

On February 3, 2020, Movant, through counsel, filed a motion to withdraw his guilty plea. (*See* Mot. to Withdraw Plea CR ECF No. 64). Movant argued that he was not properly advised of the "sentencing consequences" beyond Count 1's ten-year mandatory minimum, and that, had he known his guidelines range would be 360 months to life, he would not have pleaded guilty. (*Id.* at 2). The Court denied the motion, reasoning that Movant "was told in no uncertain terms" during his change of plea hearing that he could be sentenced up to life in prison and that counsel's incorrect estimates were not a valid basis to withdraw his plea. (*See* Sentencing Tr. CR ECF No. 90 at 35–36; *see also* Order Denying Mot. to Withdraw Plea CR ECF No. 83). The Court also found that Movant was "truthful during the plea colloquy," and that his post-plea comments recanting these statements were just "buyer's remorse." (*Id.*). The Court adjudicated Movant guilty and sentenced him to 300 months in prison—a downward variance from Movant's guidelines range. (*See* J. CR ECF No. 84 at 1–2).

Movant appealed his conviction and sentence to the Eleventh Circuit. While on appeal, Movant argued that "he did not receive close assistance of counsel because his counsel did not discuss the U.S. Sentencing Guidelines range with him and his plea was not knowing and voluntary" and that the Court "erroneously excluded rape shield evidence under Federal Rule of Evidence 412[.]" *United States v. Lundi*, 2022 WL 4137604, at *1 (11th Cir. Sept. 13, 2022), *cert. denied*, 143 S. Ct. 291 (2022). The Eleventh Circuit affirmed, holding that "Lundi's plea was knowing and voluntary because the district court specifically and repeatedly informed him that it would use the Sentencing Guidelines to fashion a sentence between ten years' imprisonment and life, it could vary or depart from the Guidelines range, and any estimates made by counsel were not binding on the court." *Id.* at *2. It further held that Movant could not argue the Rule 412 issue on appeal since "his guilty plea waived the right to appeal all non-jurisdictional defects in the proceedings." *Id.* Movant's petition for writ of certiorari was denied by the Supreme Court on October 3, 2022. *See Lundi v. United States*, 143 S. Ct. 291 (2022).

Movant filed the instant Motion on September 29, 2023. (*See* Mot. at 9).[2] The Government concedes that the Motion is timely. (*See* Resp. at 6).

**2. Legal Standard**

**A. Section 2255 Motions**

Under § 2255, "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution . . . may move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a). Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under § 2255 are extremely limited. *See United States v. Frady*, 456 U.S. 152, 165 (1982). A prisoner is entitled to relief under § 2255 if the court imposed a

---

[2] "Under the 'prison mailbox rule,' a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009) (citations omitted).

sentence that (1) violated the Constitution or laws of the United States; (2) exceeded its jurisdiction; (3) exceeded the maximum authorized by law; or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). "[R]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (cleaned up).

### B. Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to assistance of counsel during criminal proceedings. *See Strickland v. Washington*, 466 U.S. 668, 684–85 (1984). When assessing counsel's performance under *Strickland*, the Court employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance[.]" *Burt v. Titlow*, 571 U.S. 12, 20 (2013).

To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate both (1) that counsel's performance was deficient, and (2) a reasonable probability that the deficient performance prejudiced the defense. *See Strickland*, 466 U.S. at 687–88.

To establish deficient performance, the movant must show that "counsel's conduct fell 'outside the wide range of professionally competent assistance.'" *Cummings v. Sec'y for Dep't of Corr.*, 588 F.3d 1331, 1356 (11th Cir. 2009) (quoting *Strickland*, 466 U.S. at 690). Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. *See Strickland*, 466 U.S. at 690–91. The court's review of counsel's performance should focus on "not what is possible or what

is prudent or appropriate, but only [on] what is constitutionally compelled." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (cleaned up).

To establish prejudice, the movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* If a movant pleads guilty, prejudice cannot be shown unless "there is a reasonable probability that, but for counsel's errors, [the movant] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

A court need not address both prongs of *Strickland* if the defendant makes an insufficient showing on one of the prongs. *See* 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013).

### 3. Discussion

### A. Ground One

In Ground One, Movant argues that trial counsel "labored under several conflicts of interest" which adversely affected his performance. (Mot. at 3). Movant states that this "conflict" compelled counsel to take advantage of Movant's "fears" and coerce Movant to plead guilty to "something he didn't do." (Mem. at 11). Movant also asserts that this conflict was aggravated after Movant's moved to withdraw his guilty plea based on counsel's alleged coercion and inaccurate advice. (*See id.* at 16–17). Finally, Movant claims that the trial court erred by failing to inquire about this apparent conflict of interest. (*See id.* at 21).

Movant bears the burden of showing that "his defense attorney had an actual conflict of interest" and that "this conflict adversely affected the attorney's performance." *Reynolds v. Chapman*, 253 F.3d 1337, 1342 (11th Cir. 2001) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348–49 (1980)). "In order to prove that an 'actual conflict' hindered petitioner's lawyer's performance, petitioner 'must make a factual showing of inconsistent interests' or point to

'specific instances in the record' to suggest an actual impairment of his or her interests." *Freund v. Butterworth*, 165 F.3d 839, 859 (11th Cir. 1999) (quoting *Smith v. White*, 815 F.2d 1401, 1404 (11th Cir. 1987)). Movant is not entitled to relief based on speculative or hypothetical conflicts. *See Reynolds*, 253 F.3d at 1342–43.

The Court finds Movant's claim that counsel "forced" him to plead guilty because of a "conflict of interest" to be meritless. Movant fails to identify an "actual conflict" that compelled counsel to recommend that Movant plead guilty. He instead relies on conclusory and speculative assertions that counsel was worried about damaging his reputation. (*See* Motion at 11–13; Reply at 6); *see also Reynolds*, 253 F.3d at 1342–43. There is also no evidence in the record that Movant was "coerced" by counsel. Movant instructed counsel to inform the Court in the middle of trial that he wanted to plead guilty. (*See* Day 2 Trial Tr. CR ECF No. 99 at 240–41). Moreover, Movant swore under oath that no one forced, threatened, or coerced him to plead guilty. (*See* Change of Plea Tr. CR ECF No. 70 at 6). Although Movant recanted his change of plea testimony at the sentencing hearing, the Court found that Movant's testimony at the change of plea hearing was honest and that Movant's post-hoc attempt to disavow his earlier statements was self-serving and the product of "buyer's remorse." (*See* Sentencing Tr. CR ECF No. 90 at 35–36). Movant is bound by the representations he made during the change of plea hearing. *See Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977).

Movant's related arguments, that counsel's conflict of interest impacted the motion to withdraw Movant's guilty plea and that the Court failed to consider this conflict of interest, are also unpersuasive. As the Government correctly recounts, this alleged conflict arose when Movant denied that counsel "discussed any guidelines" with him prior to entering his guilty plea—which differed from the representations counsel had made in the motion to withdraw

Movant's plea. (*See* Sentencing Tr. CR ECF No. 90 at 13–17).[3] The Court then offered Movant the opportunity "to appoint another lawyer to advise you on this issue of withdrawing your plea," but Movant rejected the offer and insisted on retaining counsel. (*Id.* at 18). If there was any conflict here, Movant clearly waived it, and he cannot second-guess his own decisions on collateral review. *See United States v. Freixas*, 332 F.3d 1314, 1319 (11th Cir. 2003); *United States v. Saint Surin*, 477 F. App'x 683, 686 (11th Cir. 2012).

In short, Movant fails to demonstrate that counsel had an actual conflict of interest and, to the extent there was any, Movant waived that conflict. The record also establishes that the Court was aware of the alleged conflict and advised Movant that it would appoint Movant a new attorney if he wished. Ground One is denied.

### B. Grounds Two and Four

In Grounds Two and Four, Movant argues that he did not knowingly and voluntarily plead guilty because of counsel's ineffectiveness. As to Ground Two, Movant asserts that he could not have knowingly pled guilty because there was not a "formal" plea offer and the Court's plea colloquy was deficient. (*See* Mot. at 4). As to Ground Four, Movant raises a dizzying array of claims revolving around Movant's lack of knowledge and the alleged failure of defense counsel and the Court to comply with Rule 11 of the Federal Rules of Criminal Procedure. (*See id.* at 22–44).

Movant is procedurally barred from making these arguments. Movant already argued on direct appeal "that he did not receive close assistance of counsel because his counsel did not discuss the U.S. Sentencing Guidelines range with him and his plea was not knowing and voluntary." *Lundi*, 2022 WL

---

[3] Movant's testimony also conflicted with the representations he made during his change of plea hearing, where Movant confirmed that he understood how the sentencing guidelines worked, that he faced a maximum sentence of life, and that his guidelines sentence might be different than what his lawyer predicted. (*See* Change of Plea Tr. CR ECF No. 70 at 6–9). As it did during Movant's sentencing, the Court credits Movant's change of plea testimony over his later attempt to recant it. *See Blackledge*, 431 U.S. at 73–74.

4137604, at *1. The Eleventh Circuit conclusively rejected this argument, holding that "counsel employed his best professional judgment in advising Lundi to plead guilty" and that "Lundi's plea was both knowing and voluntary because the district court specifically and repeatedly informed him that it would use the Sentencing Guidelines to fashion a sentence between ten years' imprisonment and life, it could vary or depart from the Guidelines range, and any estimates made by counsel were not binding on the court." *Id.* at *2. Since Grounds Two and Four effectively repeat the same argument the Eleventh Circuit already rejected, they are procedurally barred in these proceedings. *See Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014) ("It is long settled that a prisoner is procedurally barred from raising arguments in a motion to vacate his sentence . . . that he already raised and that we rejected on direct appeal.").

Movant argues in his Reply that the gravamen of Ground Two—that there was no formal plea agreement and guilty plea—was not addressed on direct appeal. (*See* Reply at 3). Even if the Court accepts the premise of this argument, it is still patently frivolous. The Court laid out the elements of Count 1 during the change of plea hearing and Movant confirmed that he understood these elements and that he was pleading guilty to Count 1 of the Indictment because he was guilty of committing those acts. (*See* Change of Plea Tr. CR ECF No. 70 at 11–12). There is also no requirement that a plea agreement be in writing, it must only comport with the Federal Rules of Criminal Procedure. *See* Fed. R. Crim. P 11(c); *see also United States v. Julius*, 776 F. App'x 646, 646–47 (11th Cir. 2019) (accepting oral plea agreement). Since the Court and defense counsel plainly complied with Rule 11, Grounds Two and Four are denied.

### C. Ground Three

In Ground Three, Movant argues that counsel was ineffective for failing to consider Movant's mental illnesses, specifically his bipolar disorder, schizophrenia, and anxiety. (*See* Mot. at 46–47). Movant explains that, because

of these mental conditions, counsel should have known that his plea was involuntary. (*See id.* at 47).

The Court rejects this argument. The Court was aware of Movant's history with mental illness and even considered it when the Court made a downward variance from the guidelines sentence. (*See* Sentencing Tr. CR ECF No. 90 at 57–58). Movant also discussed his mental illnesses at the change of plea hearing and insisted that it did not affect his ability to think clearly and understand the consequences of pleading guilty. (*See* Change of Plea Tr. CR ECF No. 70 at 4–5). Moreover, both the Court and defense counsel had a lengthy opportunity to observe how the Movant comported himself before, during, and after he entered his guilty plea. There was nothing about Movant's demeanor or how he responded to the Court's questions which would have created a "bona fide doubt" within the mind of counsel or the Court that Movant was not competent to change his plea. *See Medina v. Singletary*, 59 F.3d 1095, 1106 (11th Cir. 1995); *Pompee v. Sec'y, Fla. Dep't of Corr.*, 736 F. App'x 819, 823–24 (11th Cir. 2018). The mere fact that Movant has mental illnesses does not mean that counsel (or the Court) should have presumed he was incompetent. *See Medina*, 59 F.3d at 1107; *Wright v. Sec'y for Dep't of Corr.*, 278 F.3d 1245, 1259 (11th Cir. 2002). Ground Three is denied.

**D. Ground Five**

Finally, in Ground Five, Movant argues that counsel performed ineffectively on direct appeal when he failed to properly present an argument concerning an alleged violation of Rule 412. (*See* Suppl. ECF No. 11 at 1–2). This claim is based on a misunderstanding of the Eleventh Circuit's opinion. Although the court opined that Movant's counsel "abandoned any challenge to the district court's denial of his motion under Rule 412 by engaging in only a passing reference to that issue," it also found that Movant "waived the right to appeal all non-jurisdictional defects" (including the Rule 412 issue) by pleading guilty. *Lundi*, 2022 WL 4137604, at *2. Movant could not have been prejudiced by counsel's failure to properly raise the Rule 412 argument on appeal since it

was considered and rejected on its merits by the Eleventh Circuit. *See Strickland*, 466 U.S. at 694. Movant also fails to allege that his decision to plead guilty would have changed if he knew he was waiving his right to raise the Rule 412 issue on appeal. *See Arvelo v. Sec'y, Fla. Dep't of Corr.*, 788 F.3d 1345, 1348 (11th Cir. 2015).[4] Ground Five is denied.

### 4. Evidentiary Hearing

A district court is not required to hold an evidentiary hearing where a movant's allegations are affirmatively contradicted by the record, or the claims are patently frivolous. *See Aron v. United States*, 291 F.3d 708, 715 (11th Cir. 2002). The Court finds the Movant's claims to be meritless. *See* 28 U.S.C. § 2255(b). Therefore, any request for an evidentiary hearing is denied.

### 5. Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying her petition for writ of habeas corpus has no absolute entitlement to appeal, and to do so, must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009). Here, the Movant fails to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Therefore, upon consideration of the record, the Court denies the issuance of a certificate of appealability.

### 6. Conclusion

Accordingly, it is **ordered and adjudged** as follows:

1. Movant Jim Lundi's motion to vacate sentence under 28 U.S.C. § 2255 **(ECF No. 1)** is **denied**.
2. A certificate of appealability is **denied**. Because there are no issues with arguable merit, an appeal would not be taken in good faith, and

---

[4] In the alternative, even if the Court erred in preventing defense counsel from cross-examining the victim about (alleged) false reports of sexual assault under Rule 412, Movant could not have been prejudiced by counsel's failure to properly raise this issue on appeal because the Court also found that this evidence should be excluded as unduly prejudicial under Rule 403 of the Federal Rules of Evidence. (*See* Day 2 Trial Tr. CR ECF No. 99 at 164–65). Counsel's failure to "properly" appeal this issue, in short, had no effect on the outcome of these proceedings. *See Strickland*, 466 U.S. at 694.

      Lundi is not entitled to appeal *in forma pauperis*.

3. To the extent not otherwise disposed of, any pending motions are **denied as moot** and all deadlines are **terminated**.

4. The Clerk of Court is directed to **close** this case.

**Done and ordered**, in chambers, in Miami, Florida, on March 19, 2024.

_____
Robert N. Scola, Jr.
United States District Judge

*Copies, via U.S. Mail, to*
Jim Lundi
19581-104
McCreary-USP
United States Penitentiary
Inmate Mail/Parcels
Post Office Box 3000
Pine Knot, Kentucky 42635
PRO SE